THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADLIFE MARKETING & COMMUNICATIONS CO., INC.,** | : | |
| | : | |
| | : | **CIVIL ACTION NO. 1:19-CV-1701** |
| **Plaintiff,** | : | **(JUDGE MARIANI)** |
| | : | |
| **v.** | : | |
| | : | |
| **AD POST GRAPHICS MEDIA MARKETING, INC., and AD POST GRAPHICS, INC.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff's Motion for Entry of Final Judgment of Default Against Defendant Ad Post Graphics Media Marketing, Inc. and Ad Post Graphics, Inc. (Doc. 29) is pending before the Court. The one-count Amended Complaint (Doc. 20) filed on February 2, 2021, avers that Plaintiff copyrighted the photographic images at issue and "Defendants copied, displayed, and distributed them without Plaintiff's authorization. (Doc. 20 ¶¶ 28-29.) Plaintiff seeks damages as well as injunctive relief, attorneys' fees, and costs. (Doc. 20 at 6.)

Based on Defendants' failure to respond to the Amended Complaint, Plaintiff filed the Motion for Entry of Default (Doc. 25) on April 30, 2021. After the Clerk of Court filed the Clerk's Entry of Default (Doc. 27) on May 4, 2021, Plaintiff filed the Motion under

consideration here on July 27, 2021. For the reasons that follow, the Court will grant

Plaintiff's Motion.

## II. BACKGROUND

Plaintiff is a retail food advertising company servicing retailers and wholesalers.

(Doc. 20 ¶ 2.) Defendant Ad Post Graphics Media Marketing, Inc., ("ADP-1") is a media

company that specializes in generating magazines, circulars, signs, banners, weekly ads,

and other visual signs and products. (*Id.* ¶ 3.) Defendant Ad Post Graphics, Inc., ("ADP-2")

is a related company providing the same or similar services. (*Id.* ¶ 4.) Plaintiff alleges that

Defendants copied Plaintiff's "copyrighted pieces of intellectual property from the internet in

order to advertise, market, and promote its business activities." (*Id.* ¶ 7.) Three copyrighted

pieces of intellectual property ("Works") are at issue. (*Id.* ¶ 14.) Plaintiff provides copies of

the Works and registration details of the images.  (*Id.*, Pl.'s Ex. 1 (Doc. 20-1 at 2).)

Plaintiff alleges that Defendants copied the Works approximately between July 26,

2019, and August 23, 2019, and used them during this timeframe in a series of weekly

grocery ads for a grocery store in Pennsylvania known as Kennie's Market and Kennie's

Marketplace. (*Id.* ¶ 19.) Plaintiff also alleges that, after Defendants copied the Works, "they

made further copies and distributed the Works on the internet to promote the sale of goods

and services as part of their advertising services." (*Id.* ¶ 21.)

Plaintiff filed the First Amended Complaint on February 22, 2021, alleging willful

Copyright Infringement pursuant to 17 U.S.C. § 501. (*See* Doc. 20 ¶¶ 29, 31.) Plaintiff

served ADP-1 the Amended Complaint via FEDEX delivery on March 1, 2021, and served

ADP-2 on March 3, 2021, by serving the company president at ADP-2's place of business

(Doc. 30 ¶¶ 5, 6).[1] After Defendants failed to appear or otherwise respond, Plaintiff filed the

Motion for Entry of Clerk's Judgment (Doc. 25) on April 30, 2021, and the Clerk's Entry of

Default (Doc. 27) was filed on May 4, 2021. Plaintiff field the Plaintiff's Motion for Entry of

Final Judgment of Default Against Defendant Ad Post Graphics Media Marketing, Inc. and

Ad Post Graphics, Inc. (Doc. 29) under consider here on July 27, 2021. As noted above,

Plaintiff seeks damages, injunctive relief, attorneys' fees, and costs. (*See* Doc. 30 at 14.)

## III. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, "[w]hen a party against whom a

judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R.

Civ. P. 55(a). Upon the party's request, the clerk of court may then enter default judgment,

but only if the claim is for a sum certain or one that can be made certain by computation, the

defendant has made no appearance, and the defendant is not a minor or incompetent. *Id.* at

55(b)(1). In all other cases, the party seeking a default judgment must make an application

to the court. Fed. R. Civ. P. at 55(b)(2).

_____

[1] The initial Complaint (Doc. 1) was served on December 23, 2019. (*See* Doc. 30 at 1 n.1.)
Following service of the Complaint and Defendant's failure to respond (*see* Docs. 8, 9), Plaintiff filed the
"Motion and Declaration of Counsel in Support of Plaintiff's Request for Entry of Default Pursuant to Fed. R.
Civ. 55(a)" (Doc. 13) on March 19, 2020. The Clerk's Certificate of Default (Doc. 15) was filed on the same
date. On February 22, 2022, Plaintiff filed the Notice of Withdrawal of Entry of Clerk's Default (Doc. 19) and
the Amended Complaint (Doc. 20).

3

Although the entry of default judgment is "left primarily to the discretion of the district court", the discretion is not limitless given that cases should "be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-1181 (3d Cir. 1984). "Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

In determining whether to grant a motion for default judgment, a Court must consider three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). "But when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment under Rule 55(c)." *Deutsche Bank Nat. Tr. Co. v. Strunz*, Civ. A. No. 1:12-CV-01678, 2013 WL 122644, at *1 (M.D. Pa. Jan. 9, 2013).

## IV. ANALYSIS

### A. Entry of Default Judgment

Plaintiff alleges entitlement to default judgment because Defendants have failed to appear in the lawsuit and failed to answer or otherwise respond to the Amended Complaint (Doc. 29 ¶ 7; Doc. 30 at 5) and Plaintiff has satisfied the requirements for default judgment (Doc. 30 at 9-11). In assessing Plaintiff's motion, the Court must accept the key factual allegations set out in the Amended Complaint and summarized above in light of the lack of any response or action on the part of Defendants. *See DIRECTV*, 431 F.3d at 165 n.6. Considered in the relevant legal and factual context, the Court concludes that Plaintiff is entitled to the entry of default judgment.

The first factor which considers prejudice to Plaintiff if default is denied, *Chamberlain* 210 F.3d at 164, weighs in Plaintiff's favor. Absent the default judgment, Plaintiff will be faced with an indefinite, and possibly permanent, delay in the adjudication of the Copyright Infringement claim and is left with no alternative means to vindicate its claim against the defaulting parties, including obtaining the damages allegedly owed.

The second factor which asks whether Defendants appear to have a litigable defense, *id*., also weighs in favor of Plaintiff. "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951); *Farnese v.*

5

*Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)). Here, Defendants have not responded to the allegations and, therefore, have failed to assert a defense. *Malibu Media, LLC v. Everson*, Civ. A. No. 4:19-CV-1048, 2021 WL 84180, at *1 (M.D. Pa. Jan. 1, 2021) (citing *Pesotski v. Summa & Iezzi, Inc.*, Civ. A. No. 1:17-CV-221, 2017 WL3310951, at *3 (M.D. Pa. Aug. 3, 2017)).

The third factor which assesses whether Defendants' delay is due to culpable conduct, *Chamberlain* 210 F.3d at 164, also weighs in favor of Plaintiff. "In this context culpable conduct means action taken willfully or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983). Defendants have been on notice of this action since, at the latest, March of 2021, when they were each served with the Summons and Amended Complaint. (*See* Doc. 30 ¶¶ 5, 6.) Thus, Defendants have failed to respond or take any other action to defend this lawsuit for an extended period. This lack of action amounts to deliberate and willful conduct.

Therefore, the Court finds that all factors weigh in favor of granting default judgment. However, this finding does not end the inquiry because the Court must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action since a party in default does not admit mere conclusions of law.'" *Broadcast Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (quoting *DIRECTV, Inc. v. Asher*, Civ. A. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)).

The Amended Complaint contains only one cause of action, Copyright Infringement. (*See* Doc. 20.)  Therefore, the Court will now determine whether the facts alleged in the Amended Complaint constitute a claim for Copyright Infringement.

"Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include . . . pictorial . . . works." 17 U.S.C. § 102(a)(5). "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991); *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 66–67 (3d Cir. 2018).[2] Copying is a "shorthand reference to the act of infringing any of the copyright owner's . . . exclusive rights set forth at

---

[2] *McGraw-Hill* clarifies that the addition of the word "unauthorized" to the second element in *Dun & Bradstreet Software Servs. Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2022), was error as the term is not included in the precedent upon which *Dun & Bradsteet* relied, *Whelan Assocs., Inc. v. Jaslow Denal Lab., Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986), nor is the term used by the Supreme Court in *Feist*. *McGraw-Hill*, 900 F.3d at 66-67. While *Pyrotechnics Management, Inc. v. XFX Pyrotechnics, LLC*, 38 F.4th 331, 335 (3d Cir. 2022), again added "unauthorized" to the second element, it did not cite *McGraw-Hill* or otherwise undermine the reasoning of the *McGraw-Hill* panel:

> Because *Whelan* predated *Dun & Bradstreet*, its explication of the elements controls. The traditions of this Court dictate that a panel decision may not overrule the holding of a previous panel. *Reilly v. City of Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017), *as amended* (June 26, 2017) (citing Internal Operating Procedures of the Third Circuit Court of Appeals § 9.1)[.]

*McGraw-Hill*, 909 F.3d at 67. Based on the foregoing analysis, this Court will adhere to the *Whelan* and *Feist* explication of the elements of a copyright infringement claim.

7

17 U.S.C. § 106." *Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 291 (3d Cir.1991).  Section 106 provides in pertinent part that "the owner of copyright under this title has the exclusive rights to do and to authorize . . . reproduc[tion] [of] the copyrighted work." 17 U.S.C. § 106(1).

Plaintiff avers that it owns a valid copyright of the Works as shown in its Amended Complaint (Doc. 20 ¶ 14), the Declaration of Joel Albrizio (Doc. 31 ¶¶ 7-9), and Exhibits attached to these documents. A review of the cited material, particularly the Amended Complaint and attached Exhibits, shows that the names of the copyrighted material, the registration numbers and date of the copyrights, are provided.  Thus, the Court concludes that Plaintiff has shown that he owns the copyrights to the Works.  As to the second element, Plaintiff's Amended Complaint and attached Exhibits provide ample information about Defendants' infringement of the Works, including a summary of "Infringement Data" listing three images and eight total infringements (*see* Doc. 20-1) as well as images depicting the infringements (*see* Doc. 20-2).  Therefore, the facts set forth in the Amended Complaint, as supported by attached Exhibits, state a valid claim of Copyright Infringement set out in Count I of the Amended Complaint.  Because Plaintiff is entitled to default judgment on this claim, the Court will now proceed to the issue of Plaintiff's requested relief.

## B. Relief

## 1. Injunctive Relief

Plaintiff seeks the following injunctive relief:

Plaintiff requests the Court to enter a permanent injunction against Ad-Post, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Ad-Post, prohibiting them from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from either Plaintiff's copyrighted Works or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted Works or infringing Works.[3]

(Doc. 30 at 13-14.)

A district court is permitted to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.

*Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

In support of the requested injunction, Plaintiff states that Defendants' conduct has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law.

---

[3] Plaintiff refers to Defendants collectively as "Ad-Post." (*See, e.g.*, Doc. 20 ¶ 5.)

(D.E. 20, at ¶¶ 30-33). For example, the ability of Ad-Post to use Plaintiff's
Works for its own commercial benefit without compensation to Plaintiff greatly
impairs the market value of the Works, since others competing in that business
or in related business areas, will not want to obtain a license to Plaintiff's Works
if it is already associated with a competing business; and potential licensees of
Plaintiff will not want to pay license fees to Plaintiff if they see other commercial
enterprises taking and using Plaintiff's photographs for their own commercial
purposes without paying any fee at all. (*See* Albrizio Decl. at ¶ 22).

(Doc. 30 at 13.)

Considering the factors set out in *Shields*, the first factor—whether Plaintiff has

shown actual success on the merits, 254 F.3d at 482--weighs in favor of Plaintiff in that

Defendants' default prevents the Court from deciding the case on the merits.  Further,

Plaintiff has pled sufficient facts to support default judgment on the Copyright Infringement

claim.

The second factor—whether Plaintiff will be irreparably injured by the denial of

injunctive relief, *id*.--weighs in favor of Plaintiff given that the harm identified above is

plausible. Importantly, by choosing not to participate in this litigation, Defendants present

nothing to undermine the alleged harm.

Considering the third factor—whether granting the injunction will result in greater

harm to Defendant, *id*.—weighs in favor of Plaintiff because the Court has no basis to

conclude that Defendants will be further harmed by an injunction in that there is no evidence

of any cognizable harm up to now and an injunction will only prohibit Defendants from

further violating copyright law.

Finally, the fourth factor—whether an injunction serves the public interest, *id.*—

weighs in favor of Plaintiff in that the Third Circuit has noted that "it is virtually axiomatic that

the public interest can only be served by upholding copyright protections and,

correspondingly, preventing the misappropriation of the skills, creative energies, and

resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin*

*Computer Corp.,* 714 F.2d 1240, 1255 (3d Cir.1983).

Because all factors weigh in favor of Plaintiff, injunctive relief will be granted.

## 2. Damages

Plaintiff seeks statutory damages for Defendants' violation of its claim for Copyright

Infringement, asserting that actual damages are appropriate but insufficient in this case.

(Doc. 30 at 8-12.)  The Court agrees that statutory damages are properly awarded.

17 U.S.C. § 504 addresses remedies for copyright infringement.

**(a) In General.**--Except as otherwise provided by this title, an infringer of
copyright is liable for either—

> **(1)** the copyright owner's actual damages and any additional profits of the
> infringer, as provided by subsection (b); or

> **(2)** statutory damages, as provided by subsection (c).

**(b) Actual Damages and Profits.**--The copyright owner is entitled to recover
the actual damages suffered by him or her as a result of the infringement, and
any profits of the infringer that are attributable to the infringement and are not
taken into account in computing the actual damages. In establishing the
infringer's profits, the copyright owner is required to present proof only of the
infringer's gross revenue, and the infringer is required to prove his or her
deductible expenses and the elements of profit attributable to factors other than
the copyrighted work.

**(c) Statutory Damages.—**

**(1)** Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

**(2)** In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504.

Regarding the calculation of actual damages, the Third Circuit has observed that,

[a]lthough the Act does not define "actual damages," our sister circuits have explained that an actual damages award "looks at the facts from the point of view of the[ ] copyright owners; it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001). . . . Because the Act "should be broadly construed to favor victims of infringement," *On Davis*, 246 F.3d at 164, "uncertainty will not preclude a recovery of actual damages if the uncertainty is as to amount, but not as to the fact that actual damages are attributable to the infringement," 4 Nimmer on Copyright § 14.02[A], at 12-14; *see, e.g., On Davis*, 246 F.3d at 166 (explaining that the jury's calculation of actual damages may not be based on "undue speculation" (internal quotation marks omitted)); *Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 95 (2d Cir. 1985) ("Confronted with imprecision in the computation of expenses, the court should err on the side of guaranteeing the plaintiff a full recovery."). Some uncertainty stems from the fact that the Copyright Act does not specify how

damages should be calculated. *See Mayweather*, 731 F.3d at 312. Case law, however, describes the permissible methods for determining damages.

One method involves calculating the fair market value of the licensing fees "the owner was entitled to charge for such use." *On Davis*, 246 F.3d at 165 (explaining that "[i]f a copier of protected work, instead of obtaining permission and paying the fee, proceeds without permission and without compensating the owner ... the owner has suffered damages to the extent of the infringer's taking without paying what the owner was legally entitled to exact a fee for"). Fair market value is often described as "the reasonable licensing fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." *Id.* at 167; *see Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007) (applying standard); *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002) (noting that the "market value approach is an objective, not a subjective, analysis"). Another method for calculating damages focuses on the plaintiff's own past licensing fees. *See, e.g., Jarvis*, 486 F.3d at 534 (noting district court calculated damages using plaintiff's past license).

*Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 390-91 (3d Cir. 2016).

Courts have wide discretion in determining statutory damages. *See* 17 U.S.C. § 504(c); *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 231–32 (1952). "[I]n every case the assessment must be within the prescribed limitations, that is to say, neither more than the maximum nor less than the minimum. Within limitations the court's discretion and sense of justice are controlling." *Id.* at 232. "Statutory damages serve the dual purposes of compensation and deterrence: they compensate the plaintiff for the infringement of its copyrights; and they deter future infringements by punishing the defendant for its actions." *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC,* Civ. A. No. 03–4962, 2005 WL 67077, at *4 (E.D. Pa. Jan. 11, 2005); *see also Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 544 (E.D. Pa. 2008).

13

Courts within the Third Circuit have held that "copyright infringement may be considered willful when a [d]efendant defaults and decides not to defend against the action." *Malibu Media, LLC v. Flanagan*, Civ. A. No. 2:13-CV-5890, 2014 WL 2957701, at *3 (E.D. Pa. July 1, 2014) (citing *Sony Music Entertainment v. Cassette Production, Inc.*, Civ. A. No. 92-4494,1996 WL 673158, at *5 (D.N.J. Sept. 30, 1995)).

Plaintiff's discussion of actual damages in this case includes the assertion by the president and CEO of Adlife, Joel Albrizio, that he would have charged at least $999 per month for the use of the Work on Defendants' website had Defendants requested a license to reproduce and display the copyrighted Work. (Doc. 30 at 8-9 (citing Albrizio Decl. ¶ 11 (Doc. 31)).) Albrizio also stated that the Terms of Use in the End User Subscription Agreement "specifically prescribe damages for unauthorized use of the photographs in Adlife's library . . . with a 'minimum penalty of $8,000 per image, per medium/channel of use.'" (Doc. 31 ¶ 12; *see* Terms of Use section 5(e) (Doc. 31-3).) Based on the $8,000 per image penalty for the eight unauthorized uses, Plaintiff states that Albrizio believes his actual damages to be $64,000. (Doc. 30 at 9-10 (citing Doc. 31 ¶ 23).) Plaintiff then asserts that, because it has been prevented from identifying the amount of profits related to the infringing uses of the Works due to Defendants' default, actual damages are insufficient for Defendants' infringement and statutory damages are appropriate. (Doc. 30 at 10.)

The Court disagrees with Plaintiff's assertion that actual damages amount to a minimum of $64,000 based on eight infringements at $8,000 each (*see, e.g.*, Doc. 30 at 9-

10).  Plaintiff bases this figure on the Subscription Agreement's penalty for unlicensed or prohibited use of Plaintiff's photography (*id.*).  First, the Court notes that this penalty applies to subscribers and Defendants are not subscribers.  Moreover, in *Leonard* terms, the Court cannot conclude on the facts alleged that this figure is the "fair market value of the licensing fee [Plaintiff] was entitled to charge for such use," 834 F.3d at 390, because Plaintiff does not present any evidence on this point.  Further, even if the Court were to assume that Plaintiffs' actual licensing fee of $999 per month was objectively reasonable, Plaintiff does not develop a correlation between the licensing fee and claimed actual damages of $64,000.

Using *Leonard's* alternative method which "focuses on the plaintiff's own past licensing fees," *id.* at 391, Plaintiff's actual damages would be calculated based on Plaintiff's $999 per month subscription rate.  Because a subscriber entered into the End-User Subscriber Agreement for a period of twelve months (*see* First Addendum to End-User Subscription at 8 (Doc. 31-3 at 9)), actual damages would total $11,988 since the record shows that the infringements occurred in July and August of 2019 (*see* Doc. 30 ¶ 23, Doc. 31 ¶ 11, Doc. 20-1) i.e., within a twelve-month period. The Court concludes that Plaintiff's inability to add the profit calculation into a damages award under 17 U.S.C. § 504(b) due to Defendants' default renders an award of $11,988 insufficient.

Regarding an award of statutory damages pursuant to 17 U.S.C. § 504(c), Plaintiff maintains that it is entitled to an increased statutory damages award under § 504(c)(2)

because Defendants' infringement was willful. (Doc. 30 at 10.) Asserting that willfulness

may be inferred because of Defendants' default and Defendants' actual knowledge of the

infringements based on their experience in the field (Doc. 30 at 7-8), Plaintiff contends that

"an appropriate award of statutory damages of $150,000 per photograph under 17 U.S.C. §

504(c)(2) is appropriate to accomplish full compensation to the Plaintiff for the damages

suffered, to create a strong disincentive against infringers intentionally hiding their profits . . .

and to deter future violations of copyright law" (Doc. 30 at 11). Plaintiff then concludes that,

> [g]iven the circumstances of the instant case, Plaintiff submits that an
> appropriate award of statutory damages of $320,000.00 is appropriate. This is
> based on a five times willful multiplayer [sic] being applied to Plaintiff's
> $64,000.00 in actual damages under 17 U.S.C. § 504(c)(2)[.] . . .
>
> In the alternative and at a minimum, Plaintiff submits that an appropriate
> award of statutory damages of $40,000.00 per Work, or $120,000 total for the
> three Works, is appropriate.  This is based on a five times willful multiplayer
> [sic] being applied to Plaintiff's $8,000.00 unauthorized use fee, per Work,
> under 17 U.S.C. § 504(c)(2).

(Doc. 30 at 11-12.)

The starting point for calculating statutory damages in this case is the minimum of

$750 per infringement set out in 17 U.S.C. § 504(c)(1) and the maximum of $150,000 set

out in § 504(c)(2). The minimum is too low, resulting in a total of $6,000 for the eight

infringements and would be unlikely to deter Defendants from engaging in future unlawful

conduct given that it is less than what Defendants would have to pay for an annual

subscription, *see supra* p. 15. The maximum is too high given the nature of the infringement

and the limited factual development related to damages.

Exercising the discretion allowed by statute and keeping in mind the goals of compensation and deterrence, the Court concludes that a hearing is not needed to determine an appropriate amount of damages because the current record provides sufficient information to make a reasoned assessment concerning appropriate statutory damages.  Given that Plaintiff considered $8,000 an adequate amount of compensation for a prohibited use of its photography by a subscriber, the amount is indicative of a starting point for adequate compensation for the prohibited use of an image by a nonsubscriber as well.  Because the subscriber was also paying a subscription fee of approximately $12,000 a year, adding this amount to the per/image infringement amount of $8,000 is appropriate. Thus, the Court concludes that the goal of fair compensation can be satisfied with a minimum award of $8,000 for each of the eight infringements and an additional $12,000 accounting for the subscription fee bypassed with the offending conduct for a total of $76,000.  Further concluding that Defendants' copyright infringement was willful because Defendants defaulted and decided not to defend against this action, *see supra* p.13, the Court finds that the goal of deterrence warrants statutory damages which exceed what an offending subscriber would pay for the prohibited use of an image and subscription. Accordingly, the Court will add an additional $24,000 to the base damages award set out above for a total of $100,000.

### 3. Costs and Attorneys' Fees

Plaintiff requests attorney's fees in the amount of $5,667.50 and costs in the amount of $81.50 for a total of . (Doc. 30 at 16.) The Court finds that theses requests are reasonable.

Pursuant to 17 U.S.C. § 505, a district court may, at its discretion, award costs and attorneys' fees to a prevailing party in a copyright infringement suit. 17 U.S.C. § 505.

Plaintiff's counsel has submitted a declaration and attached exhibit itemizing the time spent on this case and the costs associated with this case. (Docs. 32, 32-1). In view of Defendant's failure to appear or respond to this action and the reasonableness of Plaintiff's costs and attorneys' fees, Plaintiff's request of $5,749 will be approved.

### V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment (Doc. 29) will be granted. The Court will grant Plaintiff's request for injunctive relief and award Plaintiff _____ in statutory damages and $5,749 in fees and costs. An appropriate Order will be entered.

Robert D. Mariani
United States District Judge